IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| JACQUELINE DENNIS, | § | |
| | § | |
| Petitioner, | § | |
| | § | |
| v. | § | Civil Action No. 4:17-cv-872-O |
| | § | |
| JODY R. UPTON, Warden, | § | |
| FMC-Fort Worth, | § | |
| | § | |
| Respondent. | § | |

## OPINION AND ORDER

Before the Court is federal prisoner Jacqueline Dennis's ("Dennis") petition for writ of habeas corpus under 28 U.S.C. § 2241 (ECF No. 3 ), the FMC-Carswell Warden's response (ECF No. 7), and Dennis's reply and supplemental reply. (ECF Nos. 9, 16).[1] After considering Dennis's petition, the record, related briefing, and applicable law, the Court concludes that Dennis's § 2241 petition should be and is hereby **DISMISSED** for lack of jurisdiction.

**I. BACKGROUND**

Dennis and co-defendant Henry Francis were convicted in the United States District Court

---

[1] Pursuant to an Order filed on September 6, 2018, the Court denied Dennis's then-filed motions to expand the record and to provide new evidence (ECF Nos. 11, 12, and 13), without prejudice to her right to file a motion for leave to file a supplemental reply and proposed supplemental reply. (ECF No. 14.) Dennis then timely filed a motion for leave to file a supplemental reply with an attached proposed "Supplemental Reply." (ECF No. 16, 1–10.) The Respondent did not respond to that motion, such that the Court **GRANTS** the motion for leave (ECF No. 16) and will consider the supplemental reply.

Dennis has also filed three additional motions to expand the record or provide more "case law" in support of her claims. (ECF Nos. 15, 17, and 18.) As these motions each fail to seek permission/ leave of Court to file the additional arguments with a proposed attached pleading, they are **DENIED** and will not be considered by the Court as submitted in violation of the Order and Instructions to Parties (ECF No. 5). Furthermore, even to the extent the Court reviews the grounds raised in these motions, as explained *infra*, this Court lacks jurisdiction to consider Dennis's petition under § 2241, and nowhere in these additional motions does Dennis cite to a retroactively applicable Supreme Court decision that establishes that she was actually innocent of her charges of conviction, in order for her to be entitled to seek relief under § 2241 through the § 2255 savings clause.

for the Middle District of Florida of conspiracy to commit second degree murder of a federal official, in violation of 18 U.S.C. §§ 1117 and 1114, and six counts of using interstate and foreign commerce facilities in the commission of murder-for-hire, in violation of 18 U.S.C. § 1958. J. *United States v. Dennis,* No. 8:93-cr-304-T-23 (M.D. Fla. May 6, 1996), ECF No. 348.[2] She was sentenced to 365 months' imprisonment. *Id.* Dennis's conviction and sentence were affirmed on direct appeal to the Eleventh Circuit. *United States v. Francis, Et Al.*, 131 F.3d 1452 (11th Cir. 1997). Dennis's first § 2255 motion as amended raised forty-three claims of ineffective assistance of counsel, but that motion was denied by the same district judge who presided over her jury trial. March 6, 200 Order, *United States v. Dennis*, No. 8:99-cv-674-T-23B, ECF No. 6. In denying the motion, the district judge recounted the unusual background facts that resulted in Dennis's trial and convictions:

> On May 10, 1993, Defendant Dennis' co-defendant, Henry Francis, was arrested for conspiracy to distribute crack cocaine in Case No. 93-158-Cr-T-25B. Rendiff Green and Amanda Wilson were also arrested for participating in the same offense. Ernest Hardy, who was cooperating with law enforcement officials at the time, witnessed the transactions that resulted in the arrests of Francis and his co-defendants. D.E.A. Task Force Agent Lawrence Bahnsen made the arrests. The case was then assigned to Assistant United States Attorney (AUSA) Kevin Darken to handle the prosecution.
>
> Agent Bahnsen and AUSA Darken were present at Francis' initial appearance. From the beginning, AUSA Darken opposed Francis' request to be released on bond. Agent Bahnsen testified in support of AUSA Darken's position, describing Francis' involvement in the charged narcotics transactions. Agent Bahnsen testified further that, following his arrest, Francis voluntarily waived his right to remain silent and had admitted his involvement in two crack cocaine sales to a confidential informant, Ernest Hardy. The United States Magistrate Judge ordered Francis detained.
>
> On May 25, 1993, new counsel for Francis filed a motion for reconsideration of the Court's detention order. AUSA Darken opposed the motion, and, on June 2, 1993, the United States Magistrate Judge denied the emotion.
>
> Rendiff Green, Francis' co-defendant in the drug case, had brokered the drug

---

[2]The Court takes judicial notice of the records of Dennis's criminal case. *See* FED. R. EVID. 201(b)(2) and (c)(1).

2

transaction with Ernest Hardy that had led to the arrests of Green and Francis. While imprisoned with Green, Francis informed Green that he was plotting to kill Agent Bahnsen, AUSA Darken, and Hardy. Francis told Green that he wanted to kill Agent Bahnsen because Agent Bahnsen had testified untruthfully about Francis at the detention hearing and the he wanted to kill AUSA Darken because AUSA Darken was "corrupt" and had argued against bond for Francis. Francis told Green that Francis would get "Mauler," one of his Jamaican associates, to commit the murders, and that he was trying to raise money to pay Mauler for the job. However, after learning that Mauler wanted payment up front, Francis decided to bring in other Jamaicans to commit the murders. Knowing that Green had experience with false documents, Francis asked Green to obtain United States' passports for the Jamaicans to use to travel to the United States.

After learning of Francis' intention, Green told Agent Bahnsen, who put Green in contact with Agent Thomas of the Federal bureau of Investigation (FBI). On September 8, 1993, Green told Agent Thomas that Francis wanted Agent Bahnsen and AUSA Darken murdered. Agent Thomas told Green to go along with Francis and to tell Francis that Green could obtain United States' passports for the Jamaicans.

After corroborating the information provided by Green, the FBI prepared an Application for a Title II wire interception to monitor the calls made by Francis from the telephone at the jail. The Order authorizing the wire interception was signed on September 22, 1993.

Also, as a result of this information, another AUSA was assigned to handle Francis' narcotics prosecution. However, to avoid subjecting the new AUSA to any potential danger, AUSA Darken continued to sign all papers in the case. AUSA Darken was assigned 24-hour armed United States Marshals Service protection. Detective Richard Archie, a native speaker of Jamaican patois, was set up as the "source" for false passports and other documents. Agent Thomas gave Green a telephone number for Detective Archie, who was going by the name "A.G." and Green passed this information along to Francis, who contacted Detective Archie. Detective Archie was instructed to tell Francis that the passports would be $500 each. Eventually, however, Francis suggested that "A.G." commit the murders, and Detective Archie agreed to the plan.

From conversations with Francis, Detective Archie understood that the $500 that Francis had intended to put towards passports would instead be an initial payment for "A.G." to commit the murders. Francis told Detective Archie that his "baby mother," Jacqueline Dennis, the Defendant in the present case, would furnish Detective Archie with additional information about the intended targets. Defendant Dennis later contacted Detective Archie a number of times with information.

In September 1993, AUSA Darken saw a suspicious-looking car drive slowly back and forth past his home. An African-American woman was driving and a teenage African-American male was in the passenger seat. A neighbor later told

3

AUSA Darken that he had seen the same care behind AUSA Darken's house.

Also, in September, a woman telephoned AUSA Darken's home and claimed to be from the United States Marshals Service answering service. She asked to speak with one of the marshals, and AUSA Darken called one of the marshals to the telephone. When the marshal picked up the telephone, however, no one was there. Records of the United States Marshals Service answering service revealed that the answering service had not placed the call.

During a later search of Defendant Dennis's home, Agent Thomas found in the bedroom a copy of the criminal complaint in <u>United States v. Henry Francis, Rendiff Green, and Amanda Wilson</u>, Dist. Ct. No. 93-158-Cr-T-25B. Handwritten on the document in pencil was personal information about Agent Bahnsen and AUSA Darken, including Darken's home address and telephone number. Defendant Dennis had obtained the information for "A.G."

On May 12, 2994, Defendants Dennis, Henry Francis and others, were indicted by a Second Superseding Indictment charging one count on conspiracy to murder a federal officer engaged in, and on account of, the performance of his official duty, in violation of 18 U.S.C. § 1117 and 1114 (Count One); nine counts of use of interstate and foreign commerce facilities in the commission of murder-for-hire, in violation of 18 U.S.C. § 1958 (Counts Two through Ten); and one count of solicitation to commit a crime of violence in violation of the laws of the United States, in violation of 18 U.S.C. §§ 373 and 2 (Count Eleven). (Doc. 88)[*United States v. Dennis*, No.8-93-cr-304-SDM-TGW-6, May 12, 2994 Second Superseding Indictment]. . . .

On December 16, 1994, after a lengthy trial, the jury found Defendants Dennis and Francis guilty on Counts One through Five, Seven and Nine. (Doc. 191) [*United States v. Dennis*, No.8-93-cr-304-SDM-TGW-6, May 12, 2994 Jury Verdict].

March 6, 2000 Order, *United States v. Dennis*, No. 8:99-cv-674-T-23B, ECF No. 6.

Dennis has subsequently brought several other challenges to her conviction and sentence under both § 2255 and § 2241, all to no avail. *See United States v. Dennis,* No. 8-93-cr-304-T-23TGW, No. 8:16-cv-1657-T-23TFW, 2016 WL 3476847 at *1–2 (M.D. Fla. June 27, 2016) (dismissing successive § 2255 motion as filed without authorization from the court of appeals); *Dennis v. Chapman,* No. 4:07-cv-560-Y, 2008 WL 4791458, at *1–3 (N.D. Tex. Nov. 3, 2008) (dismissing § 2241 petition); *Dennis v. Van Buren*, No. 4:06-cv-857-Y, 2006 WL 3690297 at *1–2

4

(N.D. Tex. Dec. 14, 2006) (dismissing §2241 petition for lack of jurisdiction); *Dennis v. Van Buren*, No. 4:06-cv-072-A (N.D. Tex. Jan. 20, 2006) (denying § 2241 petition). Undaunted, Dennis filed this § 2241 petition in this Court in late 2017. Pet. 1, ECF No. 3.

## II. CLAIMS FOR RELIEF

Dennis claims that she is entitled to relief on five grounds. She relies on recent Supreme Court decisions in support of her claims. In ground one, Dennis claims that she is now innocent because, after the Supreme Court's ruling in *Burrage v. United States*, 571 U.S. 204 (2014), her conviction for conspiring to murder a federal official should be vacated. She claims that the government failed to prove that the conspiracy would not have occurred "but for" the intended victims' status as federal officials. Pet. 5, ECF No. 3. She contends in grounds two, three, and four that her statute of conviction, 18 U.S.C. § 1117, is no longer valid under *Mathis v. United States*, 136 S.Ct. 2243 (2016) and *Descamps v. United States*, 570 U.S. 254 (2013). Pet. 6, ECF No. 3. In ground five, she contends that she is now innocent under *Elonis v. United States*, 135 S.Ct. 2001 (2015). *Id.*

## III. ANALYSIS

A motion under § 2255 is the primary means of collaterally attacking a federal conviction or sentence. *Jeffers v. Chandler*, 253 F.3d 827, 830 (5th Cir.2001) (per curiam) (citing *Tolliver v. Dobre*, 211 F.3d 876, 877 (5th Cir.2000) (per curiam )). "While § 2241 is more typically used to challenge the execution of a prisoner's sentence, a federal prisoner may bring a petition under § 2241 to challenge the legality of his conviction or sentence if he can satisfy the mandates of the 'savings clause' of § 2255." *Christopher v. Miles*, 342 F.3d 378, 381 (5th Cir. 2003) (citing *Reyes–Requena v. United States*, 243 F.3d 893, 900–01 (5th Cir. 2001)). The statutory "savings clause" provides,

5

> An application for a writ of habeas corpus in [sic] behalf of a prisoner who is authorized to apply for relief by motion pursuant to this section, shall not be entertained if it appears that the applicant has failed to apply for relief, by motion, to the court which sentenced him, or that such court has denied him relief, unless it also appears that the remedy by motion is inadequate or ineffective to test the legality of his detention.

28 U.S.C. § 2255(e). Under the "savings clause," the petitioner has the burden of showing that the § 2255 remedy is "inadequate or ineffective to test the legality of his detention." *Jeffers*, 253 F.3d at 830.

Dennis cannot rely on § 2241 merely because she might now be limited in seeking relief under § 2255. *Cf. Pack v. Yusuff*, 218 F.3d 448, 453 (5th Cir. 2000) (citing *Tolliver*, 211 F.3d at 878) (holding that neither a prior, unsuccessful § 2255 motion, the limitations bar, nor successiveness renders the § 2255 remedy inadequate or ineffective)). Moreover, the Fifth Circuit has determined that, before a petitioner may pursue relief through § 2241 under the language of the § 2255 savings clause, he must show that:

> (1) his claim is based on a retroactively applicable Supreme Court decision; (2) the Supreme Court decision establishes that he was "actually innocent" of the charges against him because the decision decriminalized the conduct for which he was convicted; and (3) his claim would have been foreclosed by existing circuit precedent had he raised it at trial, on direct appeal, or in his original § 2255 petition.

*Christopher*, 342 F.3d at 382 (citing *Reyes-Requena*, 243 F.3d at 904 and *Jeffers*, 253 F.3d at 830).

Dennis has not made these showings, and a review of the grounds asserted in her § 2241 petition shows that she cannot make them.

**A.** ***Burrage v. United States*, 571 U.S. 204 (2014) Not Applicable to Dennis**

In *Burrage*, the Supreme Court addressed the type of causation needed to apply the enhanced penalty under 21 U.S.C. § 841(b)(1)(C) on an individual who distributes a controlled substance that causes death or serious bodily injury. *Burrage*, 571 U.S. at 218-19. Another very recent case rejected

6

a petitioner's attempt to raise a *Burrage*-based claim to his § 1117 conviction through a petition under § 2241 attempting to invoke the § 2255 savings clause. In *Menter v. Baltazar*, No. 3:17-1886, 2019 WL 23708287082, at *1, 3 (M.D. Penn. June 6, 2019), the district court considered and rejected the petitioner's arguments that *Burrage* undermined his conviction for conspiracy to commit murder of a federal judge under 18 U.S.C. § 1117. *Id.* The court explained:

> Initially, the court notes that there has been no change in the substantive law applicable to Petitioner's case. The statute of conviction, 18 U.S.C. § 1117, provides:
>
>> "If two or more persons conspire to violate section 1111, 1114, 1116, or 1119 of this title, and one or more of such persons do any overt act to effect the object of the conspiracy, each shall be punished by imprisonment for any term of years of for life."
>
> The superseding indictment alleged a conspiracy to violate § 1114, which in pertinent part applies to one who "kills or attempts to kill any officer or employee of the United States or of any agency in any branch of the United States government (including any member of the uniformed services) while such officer or employee is engaged in or on account of the performance of official duties . . . ." The Court finds that there has been no change in the substantive law applicable to these provisions.

*Id.* at *3. For the same reasons set out above, this Court finds that *Burrage* does not cause any substantive change in the law applicable to Dennis's § 1117 conviction for her to invoke the savings clause.

Furthermore, the Court rejects Dennis's effort to extend *Burrage*. Dennis claims that, under *Burrage*, a conspiracy to kill a federal official under 18 U.S.C. § 1117 requires "but for" proof that the targeted victims were to be killed because of their status as government employees. Pet. 5, 10, 12, 22–26, ECF No. 3. But *Burrage* involves a criminal statute that uses the term "because of," and the Supreme Court has made clear that such term requires a showing of "but-for causality." *Burrage*, 571 U.S. at 212-13. Section 1117, however, does not use the "because of" language. Dennis' conspiracy conviction under § 1117 thus falls outside the scope of *Burrage*.

Moreover, Dennis's arguments misunderstand the law applicable to § 1117. The Supreme

7

Court has held that the fact that an intended victim is a federal officer is an element necessary to establish federal jurisdiction, but the *mens rea* of the statute does not apply to this element. *See United States v. Feola*, 420 U.S. 671, 694-96 (1975); *see United States v. Benitez*, 741 F.2d 1312, 1318 (11th Cir. 1984) (rejecting defendant's jury charge challenge to his conviction under §§ 1114 and 1117 and holding "[the defendant] could be convicted of conspiring to murder government agents even if he did not know they were government agents") (citing *Feola*, 420 U.S. 671 (1975)). Thus, Dennis has no basis to argue that the government erred in her case by failing to prove that she conspired to kill her intended victims because they were government officials. Section 1117 does not require that Dennis have had this state of mind in order for her to violate this criminal statute. *See e.g. United States v. Kelley*, 850 F.3d 212, 215 n.7 (5th Cir. 1978) ("Of course, it is not necessary that the assailant know his victim is a federal officer.").

Dennis's citation to *Burrage v. United States*, 571 U.S. 204 (2014) does not show that she was convicted of a nonexistent offense. Thus, she cannot invoke the savings clause to proceed under § 2241 on this claim.

**B.** ***Descamps, Mathis,*** **and** ***Elonis***

The Court notes that Dennis next recites claims for relief based upon three Supreme Court decisions: *Descamps v. United States*, 570 U.S. 254 (2013); *Mathis v. United States*, 136 S. Ct. 2243 (2016), and *Elonis v. United States,* 135 S.Ct. 2001 (2015). Pet. 6, 11–12, 28–33, ECF No. 3. Although Dennis cites to these decisions, she has not shown that they have been made retroactively applicable, and/or that any of the decisions establishes that she was actually innocent of the charge against her because the conduct for which she was convicted has been decriminalized. *See generally Christopher*, 342 F.3d at 382. The Fifth Circuit has determined that neither *Mathis* nor *Descamps* announced a new rule on constitutional law that has been made retroactive on collateral review. *See In re Lott*, 838 F.3d 522, 523 (5th Cir. 2016) (per curiam) (denying authorization to file a successive § 2255 motion because *Mathis* did not announce a new rule of law retroactively applicable on

8

collateral review); *In re Jackson*, 776 F.3d 292, 296 (5th Cir. 2015) (denying authorization to file a successive § 2255 motion because *Descamps* did not announce a new rule of law retroactively applicable on collateral review). Moreover, relevant caselaw establishes that *Descamps* and *Mathis* do not provide a basis for invoking the savings clause. *See e.g., Jackson v. Daniels*, 637 F. App'x 173, 174 (5th Cir. 2016) (affirming district court's rejection of invocation of a savings-clause claim based upon *Descamps* because it had no "effect on whether Jackson was convicted of nonexistent federal drug offenses"); *Oxner*, 616 F. App'x at 191 (5th Cir. 2015) ("As *Descamps* addresses sentencing issues and has no effect on whether the facts of Oxner's case would support his convictions for the substantive offenses, it is not a retroactively applicable Supreme Court decision indicating that he was convicted of a nonexistent offense") (citations omitted); *Getachew v. Harmon*, No. 3:17-cv-224-D, 2017 WL 2348834, at * 3–4 n. 1 (N.D. Tex. March 27, 2017) (rejecting *Mathis* based claims under the § 2241 savings clause), *R & R adopted*, 2017 WL 2345707 (N.D. Tex. May 30, 2017).

In *Elonis v. United States*, 135 S.Ct. 2001 (2015), the Supreme Court held that the defendant's conviction under 18 U.S.C. § 875(c)—which criminalizes threats to kidnap—could not stand because the government had not shown that the defendant *intended* his communications to be threats. *Id*. at 2009. Dennis was not convicted of threatening to kidnap someone; rather, she was convicted of conspiring to murder federal officials engaged in and on account of the performance of their official duties, in violation of 18 U.S.C. §§ 1114 and 1117. She has not shown that *Elonis* applies retroactively to her § 1117 conviction. *See Poindexter v. Warden, FCI Yazoo City*, No. 3:18-cv-150-CWR-LRA, 2019 WL 2397815, at * 1 (N.D. Miss. June 6, 2019) ("On its face, *Elonis* applies only to § 875(c) and does not extend to other statutes"); *United States v. Hammond*, 354 F. Supp.3d 28, 54 (D.C.D.C. Dec. 7, 2018) (*"Elonis's* reasoning is explicitly limited to statutes that criminalize pure threats") (citations omitted); *Shah v. United States*, No. 5-12-172, 2016 WL 6762748, at *5 (S.D. W.Va. Oct. 19, 2016)("Although the Supreme Court clearly held that a

9

defendant's mental state was an element of Section 875(c), the Supreme Court did not recognize a new right concerning a conviction under Section 875(b)"), *R & R adopted*, 2017 WL 3168425 (S.D. W.Va. July 26, 2017).

Thus, Dennis's citation to *DesCamps*, *Mathis*, and *Elonis* does not invoke the savings clause for her to proceed under § 2241.

In her reply and supplemental reply, Dennis sets out arguments arising from multiple cases, but the bulk of the decisions recited are circuit and district court opinions that, of course, are not "Supreme Court decisions" made "retroactively applicable," and are thus not sufficient for this Court to consider as a basis to invoke the savings clause. See Reply and Supp. Reply, ECF Nos. 9, 16. In addition to the four Supreme Court cases analyzed and rejected above, Dennis also cites to a denial of *certiorari* in *Dority v. Roy*, 564 U.S. 1022 (2011). But a mere denial of *certiorari* cannot be considered an "applicable Supreme Court decision" for purposes of invoking the savings clause. Dennis also cites to the Supreme Court's decision in *Moncrieffe v. Holder*, 569 U.S. 184 (2013). But the Fifth Circuit has rejected a petitioner's claim that *Moncrieffe* provided a cause to invoke the savings clause. *See Jackson v. Daniels,* 637 F. App'x 173, 174 (5th Cir. 2016) ("As neither *Descamps* . . . nor *Moncrieffe* . . . has any effect on whether Jackson was convicted of nonexistent federal drug offenses, these decisions do not demonstrate that § 2255 is inadequate or ineffective.") (citing *Garland v. Roy*, 615 F.3d 391, 394 (5th Cir. 2010)). Dennis also refers to the Supreme Court decision in *Welch v. United States*, 136 S.Ct. 1257 (2016), but that case has been rejected as a basis to invoke the savings clause. *See Banks v. Warden,* No.18-cv-1408, 2018 WL 6517954, at *2 (W.D. La. October 30, 2018), *R & R adopted*, 2018 WL 6517775 (W.D. La. Dec. 10, 2018). Thus, Dennis's arguments in the reply and supplemental reply do not provide any basis to invoke the savings clause.

Because Dennis has not shown that a retroactively applicable Supreme Court decision establishes that she is now actually innocent of the charges against her, the Court concludes that she

is not entitled to relief under § 2241. Dennis's § 2241 petition therefore must be dismissed for want of jurisdiction. *See Christopher*, 342 F.3d at 379, 385 (finding that a court must dismiss a § 2241 petition for lack of jurisdiction when the requirements of the savings clause are not met).

## IV. CONCLUSION and ORDER

Accordingly, it is **ORDERED** that Jacqueline Dennis's petition for relief under 28 U.S.C. § 2241 is **DISMISSED** for lack of jurisdiction.

**SO ORDERED** on this **11th day** of **July, 2019**.

_____
Reed O'Connor
**UNITED STATES DISTRICT JUDGE**